SECURITY TRUST COMPANY, a corporation of the State of Delaware, Administrator *cum testamento annexo* of the Estate of Lilburn Chandler, and SECURITY TRUST COMPANY, a corporation of the State of Delaware, Trustee under the Will of Lilburn Chandler,

*vs.*

GRETA C. ADAMS, HOWARD H. ADAMS, EDNA C. ELIASON, HELEN DUDLEY CHANDLER, and SWITHIN T. CHANDLER.

*New Castle, April 14, 1950.*

W. *Reese Hitchens*, of the firm of Hering, Morris, James & Hitchens, for plaintiffs.

*George Gray Thouron* and *William Poole,* of the firm of Southerland, Berl & Potter, for defendant Helen Dudley Chandler.

*Henry M. Canby,* of the firm of Richards, Layton & Finger, for defendants Greta C. Adams and Howard H. Adams.

*Howard L. Williams,* for defendants Edna C. Eliason and Swithin T. Chandler.

SEITZ, Vice Chancellor. This is a complaint seeking instructions as to the meaning of certain provisions of a will and codicil.

The testator, Lilburn Chandler, died December 1, 1948, at the age of 93 years. The testator, who was a Delaware attorney, left surviving him a widow, Helen Dudley Chandler, who was then 66 years of age. The testator also left surviving him three children by a former marriage, viz.: Edna C. Eliason, then 62 years of age, Swithin T. Chandler, then 60 years of age, and Greta C. Adams, then 55 years of age.

The testator's will was dated January 18, 1937 while his codicils were dated respectively December 9, 1940, December 25, 1945 and May 24, 1948.

The testator left a gross estate of approximately $500,-000. The request for instructions by the executor and trustee are premised upon alleged ambiguities between the will itself and the third codicil.

As the case has developed it becomes unnecessary to discuss the first three requests for instructions dealing with the so-called $10,000 trust. All parties in interest are represented. They have either by admission or failure to take a position conceded that the power of appointment granted Greta C. Adams under the original will was not revoked by the language of the codicils. For the same reasons the

parties have all agreed that the duty to maintain the home to be purchased under the $10,000 trust falls on Greta C. Adams and her husband, Howard H. Adams. The parties have also by silence or admission conceded that the trust of the home terminates upon the death of the survivor of Greta C. Adams and Howard H. Adams. The executor and trustee will be so instructed as to these three items.

We come now to the three points of active disagreement among the various defendants. The first question presented is as to the termination date of the residuary trust. Specifically, does the trust continue for the lifetimes of the three named children, or also during the lifetime of the widow, if she survives the children. The testator's widow contends that the trust continues during her lifetime without regard to the survivancy of the children. The children contend that the trust terminates upon the death of the last survivor of the testator's children. The original will provided that the residue of the testator's estate was left

"* * * in Trust to collect all rents, dividends and interests thereon and therefrom, during the lifetimes of Edna C. Eliason, Greta C. Adams, Helen D. Chandler and Swithin T. Chandler provided that should any of the said my children, die, or decease, the children thereof to take the part and the place of its or their deceased parent, during the continuance of this trust. In further Trust to pay the net income of my estate to my wife and children, quarterly during the respective livetimes [*sic*] of my wife and children, or the heirs of any one or more deceased child or children and in further trust, upon the decease of the survivor of my children to pay the whole principal of this my Trust Estate, to divide and pay same to the heirs of my said children, the same in thirds, Edna's heirs to receive one third, Greta's heirs to receive one third, and Swithin's heirs to receive one third."

### The testator's third codicil reads as follows:

"I, Lilburn Chandler the testator do hereby additionally provide and do authorize my the said Trustee of my will to pay monthly to my wife Helen Dudley Chandler seventy five Dollars each and every month during her lifetime out of my income from my estate.

"Further I provide said Trustee shall all [*sic*] pay twenty-five dollars monthly to my daughter, Greta Adams out of the income of my estate during her lifetime.

"Witness my hand and seal the day and year above written.

"All other provisions of my estate under my will to be kept and at the death of the survivor of my wife and children my estate is to be settled and *the total* estate divided to their heirs and issue of heirs such as their parent could be *allowed* under the Laws of the State of Delaware."

The parties argue at length as to the effect of the testator's testamentary expressions of affection for his wife. I shall assume that the testator was quite fond of his wife and his children. He specifically left his New Jersey property and his Florida house and contents plus $1,000 to his wife. Looking at the residuary clause of the will apart from the codicils we see that he contemplated in one provision of that clause that the trust should continue for the life of his wife as well as his children because he said that the property was in trust to collect the rents, etc., "during the lifetimes of Edna C. Eliason, Greta C. Adams, Helen D. Chandler, and Swithin T. Chandler." He also provided that the income was to be paid to his wife and children quarterly during their respective lifetimes. However, he went on in the same clause to say that "upon the decease of the survivor of my children to pay the whole principal of this my trust estate, to divide and pay same to the heirs of my said children."

If I were concerned solely with the quoted language of the original will my problem would be somewhat difficult. However, I think the language of the third codicil clearly shows that the testator intended the trust to continue during the lifetime of the widow as well as of the children. Thus in the third codicil he provides for a $75 monthly payment from the residuary trust to the widow "during her lifetime." Later in the same codicil he recites that "at the death of the survivor of my wife and children my estate is to be settled and the total estate divided * *."

These two provisions of the codicil are patently inconsistent with a construction which would terminate the trust prior to the widow's death. Since the provisions

of the last codicil cannot, in this respect, be reasonably reconciled with a construction of the language of the original will excluding the widow's life from consideration, I conclude that the codicil governs and the trust continues for the lifetimes of the three children and during the lifetime of the widow if she survives them.

I next consider the question as to the identity of the beneficiaries of the corpus upon the termination of the residuary trust. The widow contends that her heirs and the heirs of the testator's children are entitled to share equally. The children contend that only the heirs of the testator's children are entitled to take and they *per stirpes*.

The language of the original will clearly limits the beneficiaries of the corpus of the residuary trust to the heirs of the testator's children *per stirpes*. Did the testator alter this intention by the use of the following language in his third codicil:

"All other provisions of my estate under my will to be kept and at the death of the survivor of my wife and children my estate is to be settled and *the total* estate divided to their heirs and issue of heirs such as their parent could be *allowed* under the Laws of the State of Delaware."

The solution to the problem of ascertaining the testator's intention here must be found from an analysis of the language of the will, the codicils and the surrounding circumstances. Did the testator by the use of the phrase "divided to their heirs" following the language "my wife and children" intend to include the heirs of his widow as well as the heirs of his children?

As stated, the language of the original will obviously does not include the widow's heirs. The language of the third codicil which causes the difficulty is almost an after-thought because it follows the language "Witness my hand * * *." Also the codicil is actually referring to the time of distribution, not conferring rights, when it says that "at the death of the survivor of my wife and children my

estate is to be settled." The use of the word "their" in the same sentence reading that "the total estate [to be] divided to their heirs and issue of heirs", was not in my opinion, intended to refer to the wife. The use of the word "their" is accurate when applied solely to the testator's children. His children's heirs were the sole beneficiaries under the original will. This is important because in the very same paragraph of the codicil here involved and immediately preceding the language involved, the testator recited that "all other provisions of my estate under my will to be kept * * *." This is some indication that the testator—a lawyer—did not intend by subsequent language in the same sentence to bring about further changes in his original will.

When the testator drew his third codicil, his wife was 65 years of age and had no children—the testator's children being by a previous marriage. There is nothing in the record to show the existence of any possible heirs of his wife Helen in whom the testator had any interest. However, at this time the testator had five grandchildren ranging in age from 19 to 32 years. These factors tend to reinforce the conclusion that the testator did not intend to enlarge the number of beneficiaries of the trust corpus as they were identified in the original will. A vague or indefinite provision in a codicil will not generally be held to revoke a definite provision in the will. See *Vol.* 1 *Page on Wills, (Lifetime Ed.)* § 466. It must also be remembered that we are not here concerned with provisions which affect the widow during her lifetime.

I construe "their" in the third codicil to refer solely to the testator's children, and I construe the will and codicils to mean that the beneficiaries of the corpus of the residuary trust are the heirs of the testator's children and that such heirs take *per stirpes*.

I come finally to determine the effect of the provisions of the third codicil providing for $75 monthly payments

to the testator's widow and $25 monthly payments to the testator's daughter, Greta C. Adams, payable from the trust income. The testator's widow contends that the monthly payments to her are "in addition to those to which she is entitled under the residuary trust." The testator's daughter, Greta C. Adams, takes the same position as to such payments. I assume by the phrase "in addition to" they mean such payments must be paid monthly from the income and the balance distributed to the widow and three children quarterly as provided in the original will. The testator's other children, viz. Edna C. Eliason and Swithin T. Chandler, contend that the monthly payment provision neither increases nor decreases the income payments to the income beneficiaries but "merely provides for a different method and time for payments of income to Helen Dudley Chandler and Greta C. Adams."

The original will provided for quarterly distribution of the trust income among the four named beneficiaries. In his third codicil the testator recites that he "additionally" provides and authorizes his trustee to pay $75 monthly to his wife and also $25 monthly to his daughter Greta C. Adams. The testator's children Edna C. Eliason and Swithin T. Chandler urge that the sole purpose and effect of these provisions of the codicil was to substitute monthly payments on account for the quarterly payments theretofore established. Whatever their effect, the creation of these provisions was the only substantial reason for the execution of the third codicil. It may also be noted that reference is made in the codicil to only two of the four income beneficiaries. Such factors tend to indicate that the provisions were intended to have a more substantial purpose than is urged by Edna C. Eliason and Swithin T. Chandler.

The more important evidence as to the testator's intent may, to my mind, be found in the language of the third codicil. In the first place, the testator used the word "additionally" in providing for the $75 monthly payment to the

widow, and he used the word "all", which I construe to mean "also", with respect to the $25 monthly payment to his daughter. These words in their context reflect an intention to give the widow and daughter something in addition to that to which they were already entitled. Since they were entitled to share equally under the original will, I think it fair to conclude that these monthly payments were to be made first and the balance of the income distributed quarterly to the four beneficiaries. I cannot agree with the contention of Edna C. Eliason and Swithin T. Chandler that the words "additionally" and "also" were words employed by the testator merely to identify the instrument as a codicil.

There is nothing in the language of the codicil which even intimates that the monthly payments were to be on account. The surrounding circumstances do not justify the conclusion that these monthly payments on account were to be made because these two beneficiaries were known to the testator to need payments more frequently than the other two beneficiaries. Nor is it suggested that under all the circumstances it is unrealistic to conclude that the testator might have desired to give such a preference to his widow and a particular daughter. I do not think rules of construction are of any real help here. It is not contended that the codicil is substitutional.

I conclude that the testator by the language of the third codicil intended to carve out the two monthly payments from the trust income and to provide for the payment thereof before the quarterly distributions were made to the four beneficiaries named in the original will.

An order accordingly will be entered on notice.